**UNITED STATES of America,**
**Plaintiff,**

v.

**INTERNATIONAL LONGSHOREMEN'S**
**AND WAREHOUSEMEN'S UNION**
**et al., Defendants.**

**No. 71 1935.**

United States District Court,
N. D. California.

Nov. 4, 1971.

Supplemental Order Nov. 5, 1971.

James L. Browning, U. S. Atty., William B. Spohn, Asst. U. S. Atty., San Francisco, Cal., and A. Theodore Giattina, E. Grey Lewis, Deputy Asst. Attys. Gen., Dept. of Justice, Washington, D. C., for plaintiff.

Richard Gladstein, Norman Leonard, San Francisco, Cal., for defendant Local 10, ILWU.

Richard Ernst, Ernst & Daniels, San Francisco, Cal., for Pac. Maritime Assn.

Ben Margolis, Margolis, McTernan, Smith, Scope & Herring, Los Angeles, Cal., for Local 13 ILWU.

George E. Shibley, Long Beach, Cal., for Local 63, ILWU.

Jordan Bloom, Littler, Mendelson & Perry, San Francisco, Cal., for Port of San Francisco Grain Terminal.

Dennis Lindsay, Lindsay, Nahstoll, Hart, Duncan, Dafoe & Krause, Portland, Or., for Pacific Northwest Grain Elevator Operators.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ORDER

SWEIGERT, District Judge.

An order to show cause re civil contempt was issued by this Court on October 28, 1971, upon the application of the United States Attorney on behalf of the plaintiff; the Court held hearings on such order to show cause on Friday, October 29th and Saturday, October 30th, and Tuesday, November 2, 1971.

Said order to show cause involves the temporary restraining order of this court, dated October 6, 1971 and the preliminary injunction of this Court, dated October 20, 1971.

The following parties were represented by their counsel of record: The plaintiff by James L. Browning, Jr., United States Attorney, William B. Spohn, Assistant United States Attorney, and A. Theodore Giattina, Trial Attorney, Department of Justice; the defendants International Longshoremen's and Warehousemen's Union and Local No. 10 thereof, by Richard Gladstein and Norman Leonard; Local No. 13 of said International by Ben Margolis; and Pacific Maritime Association, and certain of its member employers, by Richard Ernst and Dennis Daniels.

Upon completion of plaintiff's case on October 30, 1971, the Court, finding that

the plaintiff had made a prima facie case of civil contempt by certain of said defendants, and that the urgent existing situation required an appropriate interim order of the Court, made such interim order in open court; said interim order has been in effect up to this time and apparently all parties have complied with it.

Evidence was introduced and all parties rested and submitted the case to the Court for decision upon the record at the time of submission; the Court heard argument by counsel on the basis of the Court's proposed findings, conclusions and order.

It has been argued (for diverse purposes) that the collective bargaining contract, which expired June 30, 1971, is the measure of the rights and obligations of the parties under the temporary restraining order and preliminary injunction.

It must be borne in mind, however, that the authority for the preliminary injunction is, not that contract but, rather, Title 29 U.S.C. § 178—the law of the land—which outlaws strikes and lockouts during a limited 80 day period.

Although the preliminary injunction contemplates and encourages, as does this Court, resumption and continuance of ship loading operations in accordance with established pre-June 30th contract practices, that contract must be interpreted—at least during this 80 day period—in the light of the overriding purpose of the federal statute.

The Court now makes its findings, conclusions and orders as follows:

## AS TO THE UNIONS

Longshoremen's and Warehousemen's Union Locals No. 13 and No. 10 have been in civil contempt of the temporary restraining order issued by this Court, dated October 6, 1971, and the preliminary injunction issued by this Court, dated October 20, 1971, in the following respects:

A. *Local 13*

1) During the period October 6th to October 30th, steady men members of Local No. 13, in number about 174, who prior to June 30, 1971, had been working as steady men for certain employers in the Los Angeles area (among them Marine Terminals Corp., Container Stevedoring Company, Inc., Los Angeles Container Terminal, Matson Terminals, Inc., Metropolitan Stevedore Company, Crescent Wharf and Warehouse Company, and Overseas Shipping Company), have been resigning and withdrawing from their status as so-called steady men members of that Union and have been otherwise failing and refusing to report for work as steady men; that said resignations, withdrawals and refusals have not been individual, voluntary quittings by individual steady men (within the meaning of the exception set forth in said temporary restraining order at page three, paragraph two) but have been, on the contrary, collective, concerted resignations and withdrawals by members of the Union with the purpose and effect of interrupting and slowing down the loading and unloading operations here involved; that said collective, concerted resignations, withdrawals and refusals have been brought about by the acts and conduct of Local 13 hereinafter described.

2) Local No. 13 and its officers and members, have both directly and indirectly (by threats, coercions, penalty, instructions, suggestions, advices, membership votes, telephone messages, oral persuasion and otherwise) interfered with the right of individual members of said Union to become and remain steady men, as they had individually decided, advising steady men to "voluntarily" resign in mass or in groups and in other ways coercing steady men.

B. *Local 10*

1) During the period October 6th to October 28th, certain steady men, members of Local No. 10, in number about 7, who prior to June 30, 1971, worked as steady crane drivers for the Container Stevedoring Company, Inc., in the San Francisco area, have been resigning and/or withdrawing from their status as steady-man members of that Union and otherwise failing and refus-

ing to report for work as steady men; that said resignations, withdrawals and refusals have not been individual voluntary quittings by individual steady men (within the meaning of the exception set forth in said temporary restraining order and said preliminary injunction), but have, on the contrary, been collective and concerted resignations, withdrawals and refusals by members of the Union with the purpose and effect of interrupting and slowing down the operations here involved; that said collective, concerted resignations, withdrawals and refusals have been brought about by the acts and conduct of Local No. 10 as hereinafter described.

2) Local No. 10, its officers and members, have both directly and indirectly (by threats, coercion, penalty, instructions, advices, suggestions, membership votes, oral persuasions and otherwise) interfered with the right of individual members of said Union to work as or remain as steady men, as they had individually decided, advising steady men to "voluntarily" resign in mass or in groups and in other ways coercing steady men.

3) On October 29th, Union Local No. 10, acting upon its own initiative, arranged for the reporting to work of said 7 steady men and in so doing went a long way toward purging itself of the previous civil contempt hereinabove found.

4) The acts and conduct of said Unions, their officers and members, amounted to a strike, within the meaning of the temporary restraining order and the preliminary injunction, to the extent that it resulted in an interruption with and slow-down of the operation here involved.

5) Arbitration decisions, rendered pursuant to the collective bargaining contract of the parties (See, particularly, Decision of Kagel, 8/14/67; Decision of Kagel, 11/27/67; Decision of Love, 10/12/71), were in substance and effect that employers had the right to request and be furnished with their steady men as requested; that the Unions were not to directly or indirectly interfere with the right of an individual to go steady or remain steady; that the Unions were limited in this respect to expressing their policy to individuals on going steady or not.

C. *The International*

Upon the state of the evidence before it, the Court reserves judgment with respect to the International Longshoremen's and Warehousemen's Union.

## AS TO THE EMPLOYERS

Pacific Maritime Association (and certain company members thereof as to whom the Court reserves judgment) have been in civil contempt of said temporary restraining order and said preliminary injunction in the following respects:

(1) During the period October 8th to October 30, 1971, said entities have arbitrarily refused to accept work gangs, which had been dispatched by Locals Nos. 13 and 10, for the sole reason that said Unions were failing and refusing to furnish them with their respective named steady men as requested.

(2) Said employers, pursuant to said policy, have also ceased to request gangs from the Unions upon the ground that steady men were failing to respond to employers' requests or were otherwise not being dispatched as requested.

(3) This policy of PMA and its members was carried out without regard to grievance procedures and arbitration, as required by established contract practices as of June 30, 1971, and without regard to the possibility that failure of the Unions to supply steady men, or failure of steady men to respond to employers' requests, might have been due to permissible individual voluntary decisions of each requested steady man and without regard to the possibility that the work at hand could be performed by otherwise competent, but non-steady, workers.

(4) The employers had, during the strike period—July 1, 1971 until October 6, 1971, while working military and certain other cargo, accepted gangs dispatched by the Unions and proceeded with the work at hand notwithstanding failure of the Unions to furnish, or to

adequately furnish, steady men; that only after issuance of the temporary restraining order of October 6th did the PMA notify its members to insist upon said policy described in (1), (2) and (3) above; that said acts and conduct amounted in effect to a lockout, within the meaning of the temporary restraining order and preliminary injunction, to the extent that its effect was to interrupt and slow down the operation here involved.

ORDERS

The Court concludes that it should make appropriate orders herein to the effect that said parties have been in civil contempt in the respects and for the reasons hereinabove stated, and ordering said parties and each of them, to purge themselves of said civil contempt as follows:

(1) Steady men members of Union Locals 10 and 13, shall cease and desist, subject only to the exception hereinafter noted, from work stoppage and from collectively or concertedly resigning, withdrawing or otherwise failing or refusing to report for work as steady men according to their status as of June 30, 1971, at the suggestion, request, instruction or advice of Local Unions 10 or 13, or the members or officers thereof, or otherwise—save and except only that (as provided in the temporary restraining order and in the preliminary injunction) an individual employee is not required to render labor or service or to accept or to continue in steady-man status, without his own individual consent. Any dispute arising concerning the applicability of this exception to be submitted to arbitration in manner hereinafter provided.

(2) Local Unions Nos. 10 and 13, their officers and members, shall cease and desist, until further order of the Court, from directly or indirectly interfering (by threats, coercion, penalty, instructions, advices, suggestions, bulletins, telephone messages, membership votes, oral persuasion, or otherwise) with the right of individual members to take or remain in steady-man status as they have individually decided and from in any way advising steady men to "voluntarily" resign or withdraw in mass or in groups, or otherwise.

(3) Pacific Maritime Association and its member employers, and the individual officers and employees thereof, shall cease and desist, subject only to the exception hereinafter noted, from work stoppage and from refusing to accept gangs dispatched by the respective dispatch halls on the ground that the Union may have caused any steady man to fail to report as ordered in violation of this order or otherwise, save and except that the employer may refuse to accept individual workers claimed to be so incompetent that acceptance would significantly endanger life, limb or property, in which case, if the Union fails or refuses a request to promptly dispatch an acceptable replacement, the dispute shall be submitted to arbitration in the manner hereinafter provided. In the interim work shall be carried on to every extent consistent with the nature of the dispute.

(4) All arbitration concerning the exceptions hereinabove noted in paragraphs one and three of this order, shall be immediate on the spot arbitration by official arbitrators of the parties; the parties shall refrain from work stoppage to every extent possible during each arbitration and both parties shall be bound by such arbitration; in the event that work stoppage continues during arbitration or after an arbitrator's decision, the parties shall be under a duty to promptly notify this court in order that the Court may by appropriate further order utilize the Special Masters to be hereafter designated by separate order.

(5) Upon such notification, the Court may instruct said Special Masters to attend and report to the Court upon the dispute, the proceedings, the decision and post decision results; if no arbitration is held (when one should be held as herein provided) said Special Master may be instructed to conduct immediate and on the spot hearings concerning any dispute as to applicability of any exceptions

hereinabove noted and make reports to the Court. Said Special Masters shall be empowered to issue such subpoenas and to make such interim orders (subject to court approval) as may be necessary or incidental to performance of their duties.

(6) The United States Attorney and said Special Masters, shall promptly report to this Court any evidence raising probable cause to believe that any company, union or any individual officer, employee, member or agent thereof, is guilty of any further civil contempt, or of criminal contempt, of the preliminary injunction or this order.

## COMPENSATORY FINES

The Court reserves power to impose a compensatory fine, awarding damages for past acts or conduct, upon any or all of the parties, entities or individuals above mentioned, as having been found in civil contempt or as to whom judgment has been reserved on that issue. The Court, however, also reserves power to waive imposition of any such compensatory fine, with or without consent of plaintiff, in the event that the party involved has fairly purged itself of said civil contempt. The Court notes, however, and will give due weight to the recommendation made to the Court by the United States Attorney to the effect that compensatory damages for past acts or conduct should be waived as to all parties.

## COMPLIANCE FINES

The Court, hereby imposes a compliance fine in the amounts hereinafter set forth upon each of said parties found in civil contempt as above set forth, or as to whom the Court has reserved judgment on that issue, including any entity or individual subject to the preliminary injunction, said compliance fine to be paid to the Clerk of this Court (subject thereafter to further court order) in the event, and only in the event the Court hereinafter finds that any such party, entity or individual has after this day failed or refused to comply with the preliminary injunction or with this order.

| | |
|---|---|
| Pacific Maritime Association | $25,000 per day for each day of violation |
| Longshoremen and Warehousemen Union, Local No. 13 | $25,000 per day for each day of violation |
| Longshoremen and Warehousemen Union, Local No. 10 | $25,000 per day for each day of violation |
| Any Union or Company as to which the Court has reserved judgment | $25,000 per day for each day of violation |
| Individual officers, members or agents of any of the above mentioned entities | $100 per day for each day of violation |

———◆———

This Order supplements the Preliminary Injunction entered on October 20, 1971 and is equally binding on all parties to said Preliminary Injunction.

## NOTIFICATION

Each of the Unions, Local 13 and Local 10, shall forthwith prominently and continuously post copies of this order in its Union headquarters and at its dispatching halls and otherwise take steps reasonably suited to bring notice thereof to its officers and members and to urge compliance therewith. PMA shall likewise forthwith provide its employer member companies with copies of the order and otherwise take steps reasonably suited to give notice thereof to its members; said employer members shall likewise

take steps reasonably suited to give notice thereof to their respective officers and employees and to urge compliance therewith.

### SUPPLEMENTAL ORDER DESIGNATING SPECIAL MASTERS

The Court, acting under 53 Fed.R.Civ. P. and Local Rules 500 and 502(1), hereby appoints Owen E. Woodruff, a magistrate for the Northern District of California, office at San Francisco, and Thomas M. Crehan, a magistrate for the Central District of California, office at Long Beach, to serve as Special Masters of this Court to perform the duties and exercise the powers set forth in that certain order of this Court, dated and filed November 4, 1971.

Magistrate Crehan is to serve in any matters occurring at ports within the Central or Southern Districts of California and Magistrate Woodruff in any matters occurring at ports within the Northern District of California.

Any fees or expenses of said Special Masters shall be paid by the local unions and by Pacific Maritime Association in such amounts and in such proportions as may be hereinafter ordered.